## Appeal of SHERMAN STALTER CO.

Docket No. 4313.    Submitted February 17, 1926.    Decided April 21, 1926.

*Harvey D. Jacobs, Esq.*, for the taxpayer.
*Arthur J. Seaton, Esq.*, for the Commissioner.

### Before Phillips and Trammell.

This is an appeal from the determination of a deficiency in income and profits taxes for 1919, in the amount of $13,271.56. The taxpayer alleged error on the part of the Commissioner in determining that a gain resulted from the sale of a certain dredge. Other errors alleged by the taxpayer were waived at the hearing.

#### FINDINGS OF FACT.

The taxpayer was a corporation engaged in the business of engineering and construction work. Its specialty was dredging and excavation work for canals, tunnels, foundations for large buildings, and harbors. Its president, manager, and principal stockholder was one D. E. Stalter. Stalter was a well-recognized engineer, as well as a designer of dredges and machinery. In 1911 the taxpayer had a contract for some excavation work on the New York barge canal. For this work it designed and constructed its own machinery. Among the machinery was a large dredge known as the *Lyon*. The dredge was specially designed and constructed for this work and was exceptionally well built at a low cost. The taxpayer purchased material of better quality than that ordinarily used for such a dredge

and, on account of market conditions, was able to purchase the material at very low prices. It was able to purchase steel for the hull at approximately one-half the usual market price from the American Locomotive Works, which, being nearly idle, took contracts at a low price to keep their crews together. Various parts, such as boilers, motors, engines, and pipe, were purchased direct from the manufacturers rather than through jobbers. Employees of the taxpayer, personally supervised by the said Stalter, assembled and constructed the dredge. Stalter also personally designed and made the working plans and specifications.

The total cost to the taxpayer of labor and material used in the construction of the said dredge, as shown upon its books, was $127,-321.67. The taxpayer did not enter upon its books any cost for the designing, engineering, supervision or any overhead expenses. The engineering cost of the same type of dredge would have been approximately $10,000. During the period 1911 to March 1, 1913, there was a rise in the cost of labor and material of approximately 10 per cent.

The taxpayer used said dredge for its own work for eight years, and in 1919 sold it for $180,000. This amount also included some equipment purchased subsequent to March 1, 1913, over which there is no controversy. It was stipulated that depreciation should be computed at the rate of 5 per cent from March 1, 1913, to the date of sale.

The taxpayer fixed the March 1, 1913, value at $160,000, depreciated the same at 4 per cent, and reported in its return a gain of $25,185.86 on the transaction. The March 1, 1913, value of $160,000 was not placed upon the books of the taxpayer until after the sale of the dredge in 1919. In its petition the taxpayer claimed that the March 1, 1913, value was in excess of the selling price and that no gain resulted from said sale.

The fair market value of the dredge on March 1, 1913, was $160,000.

> *Order of redetermination will be entered on 10 days' notice, under Rule 50.*